**McDermott Will & Emery LLP**
Timothy W. Walsh
Andrew B. Kratenstein
Darren Azman
340 Madison Avenue
New York, New York 10173
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
twwalsh@mwe.com
akratenstein@mwe.com
dazman@mwe.com

*Counsel to the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
In re:                                                    :        Chapter 15
                                                          :
O.W. BUNKER GERMANY GMBH,[1]                              :        Case No. 15-13018 (SMB)
                                                          :
            Debtor in a Foreign Proceeding.               :
                                                          :
-------------------------------------------------------------x

**FOREIGN REPRESENTATIVE'S REPLY**
**TO NUSTAR'S RESPONSE TO VERIFIED PETITION FOR RECOGNITION OF**
**GERMAN ADMINISTRATION PROCEEDING AND RELATED RELIEF**

Dr. Gideon Böhm, the duly appointed administrator and foreign representative (the

"Administrator") of O.W. Bunker Germany GmbH (the "Debtor"), through his undersigned

counsel, respectfully submits this Reply to the *Response to Verified Petition for Recognition of*

*German Administration Proceeding and Related Relief* [Docket No. 13] (the "Objection"), and

respectfully states as follows:[2]

---

[1] The last four digits of the Debtor's tax identification number are 0130.

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the *Verified Petition for Recognition of German Administration Proceeding and Related Relief* [Docket No. 2].

## PRELIMINARY STATEMENT

As detailed in the Petition and accompanying documents, the Debtor has met all of the legal and factual requirements for recognition.  In opposing recognition, NuStar Energy Services, Inc. and NuStar Terminals Marine Services N.V. (collectively, "NuStar") do not argue that the Debtor fails to meet any of these requirements.  Instead, based on the Debtor's full disclosure of its intentions in this chapter 15 case once recognition is granted, NuStar grossly mischaracterizes the Debtor's intentions in a misguided attempt to convince this Court to ignore the law.  The Objection should be overruled.

After the Objection was filed, the Debtor reached out to NuStar in an attempt to better understand whether NuStar has a legitimate objection.  NuStar has confirmed that it takes issue with the Debtor's proposed and fully-disclosed strategy in this chapter 15 case.  That strategy, however, is wholly irrelevant to whether recognition should be granted.  NuStar will have an opportunity to raise those issues if and when they are properly before the Court, but now is not that time.

## REPLY

A.      *Purpose of this Chapter 15 Case*

1.      As stated in the Petition, the Debtor commenced this chapter 15 case to seek assistance from this Court with respect to the Interpleader Actions and the Arrest Actions.  *Petition* ¶¶ 2-4.  Additionally, the Debtor may in the future need to seek recognition by this Court of orders entered by the German Court to bind other parties to the Interpleader Actions and the Arrest Actions.  *Petition* ¶ 5.

2.      Contrary to NuStar's assertion, these purposes are not "improper."  *Objection*, Article I.  The Debtor's proposed strategy in this chapter 15 case is no more an attempt to obtain

a "litigation advantage," *Objection* ¶ 18, than a decision by any foreign representative to commence a chapter 15 case when the legal requirements are satisfied.  In other words, NuStar's displeasure with the Debtor's proposed strategy does not render that strategy, or the commencement of this chapter 15 case, improper.

3.      NuStar also takes issue with the fact that the Debtor commenced this chapter 15 case approximately one year after the German Proceeding was commenced.  *Objection* ¶ 2.  This argument fails for at least two reasons.

4.      First, the timing of this chapter 15 filing is not relevant to any of the elements that must be satisfied for recognition to be granted.  *See Petition* ¶¶ 37-38.

5.      Second, as it relates to the Debtor's proposed strategy, the impact of this chapter 15 case on the Interpleader Actions and the Arrest Actions would be no different if this chapter 15 case had been filed one day after the German Proceeding was commenced as opposed to now.  Certain of the Interpleader Actions and Arrest Actions are still in the discovery stage, with discovery set to be completed in those actions at the end of January 2016, and no discovery schedule has been set in the remaining cases, including the Texas Actions.  *Petition* ¶¶ 26, 28-29.

6.      The Debtor is not seeking to alter the discovery schedule in the Interpleader Actions or the Arrest Actions,[3] and is not seeking to enforce the automatic stay, but rather is seeking to have this Court adjudicate all non-maritime law issues, including the priority of claims to the interpleader funds on deposit with the United StatesDistrict Court for the Southern District of New York ("SDNY").  Those non-maritime law issues cannot be decided by this Court, or any other court, until (i) discovery is completed, and (ii) the SDNY has decided the

---

[3] In fact, the Debtor has spent a significant amount of time and money complying with document requests and deposition notices in the Interpleader Actions and Arrest Actions, *see Exhibit A*, in contrast to the North American O.W. Bunker entities, which are in chapter 11 proceedings and have fought all document and deposition requests by other parties.  *See Exhibit B*.

maritime law issues (*e.g.*, whether the physical or contractual suppliers have maritime liens). These events will not occur until Summer 2016 at the earliest.[4]  Thus, the Interpleader Actions and Arrest Actions will not be affected any differently than they would have been if this chapter 15 case was filed at an earlier time.

B.      *The Amended Standing Order of Reference*

7.      NuStar also grossly mischaracterizes the Debtor's intentions with respect to this chapter 15 case.  The Debtor has not asserted in any of its pleadings that the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York* dated January 31, 2012 (the "Standing Order") serves as a basis for transferring the Texas Actions to this Court.  The Debtor has made a motion to transfer the Texas Actions to the SDNY. *If* the court overseeing the Texas Actions grants the Debtor's pending motion to transfer venue to this District pursuant to 28 U.S.C. § 1404(a), then Debtor will seek to enforce the Standing Order with respect to the Texas Actions.

8.      The Debtor clearly laid out its intentions in a letter submitted to Judge Caproni in the SDNY Actions (attached hereto as Exhibit C) and served on all appearing parties via ECF, including NuStar.  No such letter or motion was filed in the Texas Actions.  NuStar cannot ignore the proper chapter 15 recognition analysis set forth in the Bankruptcy Code by attributing non-existent arguments or stratagems to the Debtor.

9.      NuStar's assertion that "standing reference orders were not meant to disrupt the status quo (with respect to pending litigation) and transfer (without motion or proof) existing

---

[4] Under the current Scheduling Order, dated November 23, 2015, in the non-stayed Interpleader Actions and Arrest Actions pending in the SDNYt, the deadline for the completion of discovery has been extended to January 29, 2016 and the post-discovery joint conference has been adjourned to February 5, 2016.  Given the sheer number of non-stayed actions and the fact that Judge Caproni has not yet set a briefing schedule for the summary judgment motions contemplated by the various parties thereto, the Debtor does not anticipate a ruling by Judge Caproni on the maritime issues until the middle of 2016, at the earliest.

proceedings to a venue selected by a bankruptcy debtor" is also belied by case law in this and other districts.  Specifically, the SDNY has previously recognized that if a proceeding involving a debtor is pending in the federal district court in which the debtor files its bankruptcy petition, the proceeding becomes "related to" the debtor's bankruptcy case and referral of the action to the bankruptcy court is automatic.  *See, e.g.*, Hickox v. Leeward Isles Resorts, Ltd., 224 B.R. 533, 539 (S.D.N.Y. 1998) (granting defendant's motion to refer pending district court action to the bankruptcy court and stating that "[c]ase law favors interpreting [the SDNY's general order of reference] to mandate referral of 'related' cases to bankruptcy court if the pending case falls within the terms of the General Reference Order and if the bankruptcy court has jurisdiction over the matter.") (citing Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc., 132 B.R. 4, 6 (S.D.N.Y. 1991) (stating that referral to the bankruptcy court is mandatory and automatic if a matter arises in or relates to a case under title 11)); see also Alliance Commc'ns Grp., Inc. v. Northern Telecom, Inc., 65 B.R. 581, 585 (S.D.N.Y. 1986) (noting that referral to the bankruptcy court under 28 U.S.C. § 157(a) and the standing order of reference "is immediate and automatic.").

10.     In short, Debtor's intention to consolidate the ongoing U.S. legal proceedings in this Court for a determination of non-maritime:  (a) is permissible as a matter of procedure; (b) is advisable as a matter of judicial economy and subject matter expertise; and (c) most pertinent to this application, has no bearing on whether recognition should be granted.

C.    *Relief Requested*

11.    NuStar appears concerned that the Debtor has requested relief that goes beyond recognition, *Objection* ¶¶ 24, 37, but that is plainly not the case.  Only recognition is being sought, as explicitly set forth in the Petition and accompanying papers.

12.    In its Objection, NuStar submitted more than two pages of legal analysis addressing whether the automatic stay applies to the Interpleader Actions and Arrest Actions.  Again, this issue is not before the Court and has no bearing on whether recognition should be granted.

13.    NuStar's sole purpose in filing the Objection is to increase the Debtor's cost of litigation and create unnecessary delays in seeking recognition of this chapter 15 case to further NuStar's own agenda (whatever that may be).

14.    NuStar's intentions are further evidenced by the motion that it recently filed in the Texas Actions, which was attached to the Objection as Exhibit NS-1 (the "Motion to Sever").  As addressed in the Debtor's response to the Motion to Sever, which is attached hereto as Exhibit D, the Motion to Sever does not address a single element that courts consider when severing a claim.  NuStar's insistence on filing pleadings across the country in an effort to drive up the Debtor's legal fees should not be condoned by this Court.

## CONCLUSION

15.    NuStar alleges that the Debtor commenced this chapter 15 case as a litigation "tactic," *Objection* ¶ 37, yet NuStar's Objection is devoid of any legal argument that would support denial of the Petition.  This chapter 15 case is no more a litigation "tactic" than any other strategy utilized by a debtor that is party to pending litigation to exercise its right to avail itself of this Court's jurisdiction.  The Debtor is entitled to use the chapter 15 process consistent with the

terms of the Bankruptcy Code, the same as any other foreign representative who satisfies the

Bankruptcy Code's requirements for recognition.  NuStar's displeasure with the chapter 15 filing

and the Debtor's proposed strategy has no bearing on whether recognition should be granted.

WHEREFORE, the Administrator respectfully requests that this Court grant the Petition and enter the Proposed Order recognizing the German Proceeding as a "foreign main proceeding," and granting such other relief as is appropriate under the circumstances.

Dated: December 7, 2015
       New York, New York

MCDERMOTT WILL & EMERY LLP

/s/ Timothy W. Walsh
Timothy W. Walsh
Andrew B. Kratenstein
Darren Azman
340 Madison Avenue
New York, New York 10173
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
twwalsh@mwe.com
dazman@mwe.com

**Exhibit A**

Letter to Judge Caproni, dated September 23, 2015



# HILL RIVKINS LLP

45 Broadway, Suite 1500, New York, NY 10006-3793
Tel: 212 669-0600    Fax: 212 669-0698/0699
e-mail: thefirm@hillrivkins.com
Website: www.hillrivkins.com

**MEMO ENDORSED**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_9/24/2015__

JUSTIN M. HEILIG
Direct: (212) 669-0644
jheilig@hillrivkins.com

September 23, 2015

**Via ECF System**

The Honorable Valerie E. Caproni
U.S. District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Date: 9/24/2015

Application GRANTED. The deadline for discovery in each of the four actions listed below shall be extended December 18, 2015. The parties to these actions shall not be required to appear before the Court for the joint post-discovery status conference on November 6, 2015, but instead shall appear before the Court on December 18, 2015 at 2:00 p.m.

SO ORDERED.

*Valerie Caproni*

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

Re:    **Discovery Update from O.W. Bunker Germany GmbH**
       Civil Action Nos. 14-cv-9542, 14-cv-9949, 14-cv-10027, 15-cv-6718
       Our Ref: 32629-AJP/JMH
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Dear Judge Caproni:

We represent O.W. Bunker Germany GmbH ("OW Germany"), together with our co-counsel McDermott Will & Emery LLP, in the above-referenced actions. Pursuant to Your Honor's recent Order (Dkt. #111 in 14-cv-9949), we are writing to provide an update on OW Germany's efforts to obtain documents from servers currently under the control of the trustees of O.W. Bunker & Trading A/S in Denmark.

On September 14, 2015, the trustees advised us that OW Germany can purchase a "package" of archived data for EUR 14,000, and that the former head of OW Bunker's IT division (who is now assisting the Danish estate as a consultant) needs approximately two weeks to prepare the data package upon acceptance. On September 15, 2015, we received authorization to purchase the data package and we immediately confirmed the order with the trustees.

Based on the trustees' estimate, we do not expect the data package to be delivered before the end of September. After receiving the package, we will need to upload and process the data, conduct the proposed keyword searches (which have been discussed with several parties to these actions), and review any responsive documents for relevancy

NEW JERSEY
102 South Broadway
South Amboy, NJ 08879-1708
Tel: 732 838-0300  Fax: 732 316-2365
e-mail: thefirm@hillrivkins.com

TEXAS
55 Waugh Drive, Suite 1200
Houston, Texas 77007
Tel: 713 222-1515  Fax: 713 222-1359
e-mail: thefirm@hillrivkins.com

CALIFORNIA
Hill Rivkins Brown & Associates
11140 Fair Oaks Boulevard, Suite 100
Fair Oaks, CA 95628-5126
Tel: 916 535-0263  Fax: 916 535-0268
e-mail: thefirm@brnlaw.com

Hon. Valerie E. Caproni
USDC - SDNY
Sep. 23, 2015
-Page 2-

and privilege before responding to various discovery requests from other parties. As we advised Your Honor during the telephonic discovery conference held on September 10, 2015, we believe that it is appropriate for OW Germany's document production to be made before conducting depositions so that the parties' witnesses can be asked to address all available documents. Moreover, the parties have yet to agree on how, when, and where the depositions will take place, although we are actively engaged in discussions with opposing counsel in an effort to resolve these issues.

Accordingly, we respectfully request that the discovery deadlines set forth in the Court's omnibus Amended Scheduling Order (Dkt. #72 in 14-cv-9262) be extended for those actions in which OW Germany is a party. The current deadlines and proposed extensions are as follows:

| Action | Current Deadline | Proposed Extension |
|---|---|---|
| 14-cv-9542 | October 30, 2015 | December 18, 2015 |
| 14-cv-9949 | October 30, 2015 | December 18, 2015 |
| 14-cv-10027 | October 19, 2015 | December 18, 2015 |
| 15-cv-6718 | n/a | December 18, 2015 |

The proposed extensions are consistent with the discovery deadline initially proposed by OW Germany in the parties' joint pretrial conference letter (Dkt. #76 in 14-cv-9949).

As Your Honor may recall, action 15-cv-6718 (the "Arrest Action") was transferred from the Western District of Washington to this Court in August 2015. No scheduling order has been issued in the Arrest Action. To the extent Your Honor grants the pending Rule 56(d) requests (Dkt. #54, 58 & 60) and denies the plaintiff's pre-discovery motion for summary judgment (Dkt. #37), OW Germany respectfully submits that the Arrest Action should proceed on the same schedule as action 14-cv-9949 given the overlap of parties and transactions.

We thank the Court for its attention to the foregoing and standby ready to answer any questions that Your Honor may have about the requested discovery extensions.

Respectfully submitted,
HILL RIVKINS LLP

Justin M. Heilig



Hon. Valerie E. Caproni
USDC - SDNY
Sep. 23, 2015
-Page 3-

Cc (via ECF and email):

Timothy W. Wash, Esq.
Darren T. Azman, Esq.
McDERMOTT WILL & EMERY LLP
*Co-Counsel for O.W. Bunker Germany GmbH*

Michael Fernandez, Esq.
Gina Venezia, Esq.
FREEHILL HOGAN & MAHAR LLP
*Attorneys for Hapag-Lloyd AG*

John R. Keough III, Esq.
Casey D. Burlage, Esq.
CLYDE & CO US LLP
*Attorneys for U.S. Oil Trading LLC*

Bruce G. Paulsen, Esq.
Brian P. Maloney, Esq.
SEWARD & KISSEL LLP
*Attorneys for ING Bank N.V., as Security Agent*

Davis Lee Wright, Esq.
Robert E. O'Connor, Esq.
MONTGOMERY McCRACKEN WALKER & RHOADS LLP
*Attorneys for O.W. Bunker USA, Inc.*

J. Stephen Simms, Esq.
John T. Ford, Esq.
SIMMS SHOWERS LLP
*Attorneys for O'Rourke Marine Services L.P., L.L.P.*

Thomas H. Belknap, Esq.
Keith Letourneau, Esq.
BLANK ROME LLP
*Attorneys for NuStar Terminals Marine Services N.V.*

James H. Power, Esq.
Marie E. Larsen, Esq.
HOLLAND & KNIGHT LLP
*Attorneys for Bonny Gas Transport Limited*



**Exhibit B**

Order, dated December 1, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__12/1/2015__
```

----------------------------------------------------------X

CLEARLAKE SHIPPING PTE LTD,                          :
                                                     :
                              Plaintiff,             :
                                                     :
              -against-                              :
                                                     :    14-CV-9287  (VEC)
O.W. BUNKER (SWITZERLAND) SA, O.W.                   :
BUNKER USA INC., O.W. BUNKER NORTH                   :
AMERICA INC., O.W. BUNKER HOLDING                    :
NORTH AMERICA INC., NUSTAR ENERGY                    :
SERVICES INC., ING BANK N.V.,                        :
                                                     :
                              Defendants.            :
----------------------------------------------------------X
                                                     :
HAPAG-LLOYD AKTIENGESELLSCHAFT,                      :
                                                     :
                              Plaintiff,             :
                                                     :    14-CV-9949 (VEC)
              -against-                              :
                                                     :
U.S. OIL TRADING L.L.C., O.W. BUNKER                 :
GERMANY GMBH, O.W. BUNKER &                          :
TRADING A/S, ING BANK N.V., CREDIT                   :
AGRICOLE S.A.,                                       :
                                                     :
                              Defendants.            :
                                                     :
----------------------------------------------------------X
HAPAG-LLOYD AKTIENGESELLSCHAFT,                      :
                                                     :
                              Plaintiff,             :
                                                     :
              -against-                              :    14-CV-10027 (VEC)
                                                     :
O'ROURKE MARINE SERVICES L.P., L.L.P.,               :
O.W. BUNKER GERMANY GMBH, O.W.                       :
BUNKER USA, INC., ING BANK N.V.,                     :
                                                     :
                              Defendants.            :
----------------------------------------------------------X

```
-------------------------------------------------------X
                                             :
CANPOTEX SHIPPING SERVICES LIMITED,          :
individually and on behalf of M/V GLOBAL     :
PHOENIX (IMO No. 9565053), M/V CMB           :
GIULIA (IMO No. 9588419), and M/V ASTON      :
TRADER II (IMO No. 9392731),                 :
                                             :
                          Plaintiffs,        :
                                             :
              -against-                      :          15-CV-1351 (VEC)
                                             :
O.W. BUNKERS (UK) LIMITED, O.W. SUPPLY       :
& TRADING A/S, CHEVRON MARINE                :
PRODUCTS LLC, ING BANK N.V.,                 :
                                             :
                          Defendants.        :
                                             :
-------------------------------------------------------X
```

## ORDER

VALERIE CAPRONI, United States District Judge:

WHEREAS on November 30, 2015, counsel for O.W. Bunker USA Inc., O.W. Bunker North America Inc. and O.W. Bunker Holding North America Inc. (together, the "U.S. Debtors"), Nustar Energy Services Inc. ("NuStar"), O.W. Bunker Germany GmbH ("O.W. Germany") and Hapag-Lloyd Aktiengesellschaft ("Hapag-Lloyd") appeared for a teleconference before the Court in related cases 14-cv-9287, 14-cv-9949, 14-cv-10027 and 15-cv-1351;

IT IS HEREBY ORDERED that:

1. In 14-cv-9287 and 14-cv-10027, the U.S. Debtors' objections to document requests made by NuStar, O.W. Germany or Hapag-Lloyd are overruled to the extent that the requests are circumscribed to documents responsive to targeted search terms, such as: (a) the vessel name; (b) the IMO number; (c) the purchase order number; (d) the invoice number and (e) the supplier's contract number, and are limited in scope to a date range

appropriate for the bunker deliveries at issue.   To the extent any of those search terms

return an inordinately large number of documents, the parties are directed to meet and

confer to attempt to minimize the document production burden on the U.S. Debtors.

2.  Counsel for the U.S. Debtors, O.W. Germany and Hapag-Lloyd are directed to meet and

confer in order to resolve issues relating to (a) outstanding document requests in 14-cv-

9949 and 15-cv-1351 and (b) O.W. Germany's request to depose the U.S. Debtors.  The

parties should jointly call Chambers to schedule a discovery teleconference in the event

they determine that Court intervention is required.


**SO ORDERED.**


**Date:  December 1, 2015**                                    **VALERIE CAPRONI**
**New York, New York**                                    **United States District Judge**

**Exhibit C**

Letter to Judge Caproni, dated November 11, 2015

# McDermott Will & Emery

Boston  Brussels  Chicago  Dallas  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Timothy W. Walsh
Attorney at Law
twwalsh@mwe.com
+1 212 547 5873

November 11, 2015

VIA ECF SYSTEM

The Honorable Valerie E. Caproni
U.S. District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re:     Civil Action No. 14-cv-09949 (VEC)
        Civil Action No. 14-cv-10027 (VEC)
        Civil Action No. 14-cv-09949 (VEC)
        Civil Action No. 15-cv-06718 (VEC)
        Civil Action No. 15-cv-00190 (VEC)

Dear Judge Caproni:

    We represent O.W. Bunker Germany GmbH ("OW Germany"), together with our co-counsel Hill Rivkins LLP, in the above-referenced actions.

    We write to inform the Court that on November 11, 2015, Dr. Gideon Böhm, the duly appointed administrator and foreign representative of OW Germany, which is currently in administration proceedings under the Germany Insolvency Code (the "German Proceeding"), filed a chapter 15 petition in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking recognition of the German Proceeding as a "foreign main proceeding" pursuant to Bankruptcy Code section 1517 (the "Chapter 15 Proceeding").

    Pursuant to Bankruptcy Code section 1520, the automatic stay under Bankruptcy Code section 362 will apply with respect to OW Germany after the German Proceeding is recognized as a "foreign main proceeding" by the Bankruptcy Court.  At this time, OW Germany does not intend to invoke the automatic stay with respect these actions.  However, after the Bankruptcy Court grants recognition of the German Proceeding as a "foreign main proceeding," OW Germany intends to file a motion with this Court seeking an order confirming that the Amended Standing Order of Reference in this District (M-431) requires that these actions be referred to the Bankruptcy Court.  After these actions are referred to the Bankruptcy Court, OW Germany intends to withdraw the reference to the Bankruptcy Court with respect to these actions, pursuant to section 157 of title 28 of the United States Code, but only for the limited purpose of Your

The Honorable Valerie E. Caproni
November 11, 2015
Page 2

Honor resolving issues related to maritime law.  Specifically, OW Germany contemplates that Your Honor will adjudicate whether the physical suppliers have maritime liens.  After adjudication by Your Honor of this (and any other) maritime issue, OW Germany contemplates that the Bankruptcy Court will adjudicate all remaining issues, including which party is entitled to the interpleader funds.

OWG intends to comply with its discovery obligations in these actions, including Your Honor's deadline for completing discovery by December 18, 2015.  The Chapter 15 Proceeding is not intended to disrupt the discovery schedule set forth by the Court.  However, as discussed at our last telephonic status conference with Your Honor, there may be factors independent of the Chapter 15 Proceeding that necessitate a further extension to the discovery deadline in these actions.

We thank the Court for its attention to the foregoing issues, and stand ready to answer any questions that Your Honor may have.

Sincerely,

Timothy W. Walsh

Cc:     All counsel of record via ECF

**Exhibit D**

Debtor's Response to Motion to Sever

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| NUSTAR ENERGY SERVICES, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:14-cv-03350 |
| - against - | § | |
| | § | Filed under Fed. R. Civ. P. 9(h) |
| M/V COLUMBA, IMO No. 9143233, | § | |
| her engines, apparel, furniture, equipment, | § | (ADMIRALTY) |
| appurtenances, tackle, etc., *in rem*, | § | |
| | § | |
| Defendant. | § | |
| ———————————————— | § | |
| | § | |
| HAPAG-LLOYD AKTIENGESELLSCHAFT, | § | |
| as claimant to the *in rem* defendant, | § | |
| | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| - against - | § | |
| | § | |
| O.W. BUNKER GERMANY GMBH, O.W. | § | |
| BUNKER USA, INC. and ING BANK N.V., | § | |
| | § | |
| Third-Party Defendants. | § | |

## O.W. BUNKER GERMANY GMBH'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO SEVER CLAIMS

Justin M. Heilig | Daniela D. Oliveira

HILL RIVKINS LLP

Attorney for O.W. Bunker Germany GmbH

Third-party defendant O.W. Bunker Germany GmbH ("OW Germany"), by and through

its undersigned counsel, hereby responds in opposition to the Motion to Sever Claims [Dkt. #52]

of plaintiff NuStar Energy Services, Inc. ("NuStar") as follows:

# I.
## STATUS CONFERENCE REQUEST

As noted by NuStar's Certificate of Conference [Dkt. #52 at p.7], OW Germany supports

the request for a hearing on all case-related matters, including the numerous motions pending

before the Court in this action and a related case:

1) NuStar's *unopposed* motion to consolidate this action with the related action [S.D. Tex. 4:14-cv-03294, Dkt. #17];

2) NuStar's *pre-discovery* motion for summary judgment in the related action [S.D. Tex. 4:14-cv-03294, Dkt. #24];

3) NuStar's *opposed* motion to dismiss Hapag-Lloyd's counterclaim and third-party complaint for interpleader relief [Dkt. #22];

4) OW Germany's *opposed* motion to transfer venue to the Southern District of New York [Dkt. #24];

5) ING's *opposed* motion for discovery pursuant to Rule 56(d) in the related action [S.D. Tex. 4:14-cv-03294, Dkt. #47]; [1]

6) NuStar's *opposed* motion to dismiss ING's cross-claims [Dkt. #45]; and

7) NuStar's *opposed* motion to sever its maritime lien claims [Dkt. #52].

---

[1] OW Germany's opposition to NuStar's motion for summary judgment in the related action [S.D. Tex. 4:14-cv-03294, Dkt. #48] likewise requests that the motion be denied without prejudice to renewal upon completion of discovery. A Rule 56(d) request for discovery need not take the form of a separate motion, and can be properly raised in an opposition to summary judgment. *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992); *Holden v. Illinois Tool Works, Inc.*, 2009 WL 204469 at *10 (S.D. Tex. July 8, 2009), *aff'd*, 429 F. App'x 448 (5th Cir. 2011).

OW Germany submits that a status conference would be beneficial to all parties given the interplay of these motions and the uncertainty as to how this action should proceed while they remain pending. Accordingly, OW Germany respectfully requests a hearing on all case-related matters (not just NuStar's motion to sever).

## II.
## RULE 21 STANDARD

The "impulse" under the Federal Rules of Civil Procedure "is toward entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Therefore, the "joinder of claims, parties and remedies is strongly encouraged." *Id.*; *see also Nase v. Teco Energy*, 347 F.Supp.2d 313, 322 (E.D. La. 2004); *Wade v. Minyards Foods Stores*, 2003 WL 22718445 at *1 (N.D. Tex. Nov. 17, 2003). Nevertheless, Rule 21 provides that a district court "may at any time, on just terms, add or drop a party," and that it "may also sever any claim against a party." "Severance under Rule 21 creates two separate actions or suits where previously there was but one." *U.S. v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983).

District courts typically consider the following factors in determining whether to sever claims under Rule 21: (1) whether the claims arise out of the same transaction or occurrence as the other claims; (2) whether the claims present some common questions of law or fact; (3) whether settlement or judicial economy would be facilitated by severance; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *See*, *e.g.*, *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co., Inc.*, 2012 WL 4442368 at *1 (N.D. Tex. Sept. 26, 2012); *In re Southern Scrap Metal CO., LLC*, 713 F.Supp.2d 568, 588 (E.D. La. 2010).; *see also In re Rolls*

*Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014) ("While our circuit has not formally

adopted a severance test, our district courts have settled on a standard which accords with that

used in other circuits.") (citing *Paragon*, 2012 WL 4442368 at *1, and *Morris v. Northrop

Grumman Corp.*, 37 F.Supp.2d 556, 580 (S.D.N.Y. 1999)).

### III.
### ARGUMENT

NuStar has failed to demonstrate that the severance of its lien claims would be

appropriate under the circumstances.  Apart from misrepresenting the purpose and effect of OW

Germany's chapter 15 petition in the U.S. Bankruptcy Court for the Southern District of New

York, NuStar does not even address the five factors considered by courts in determining whether

to sever claims.   Accordingly, NuStar's motion must be denied.

### A.  NUSTAR HAS NOT ADDRESSED ANY OF THE FACTORS CONSIDERED UNDER RULE 21 IN DETERMINING WHETHER TO SEVER CLAIMS

As the movant, NuStar bears the burden of proof to demonstrate that severance is

warranted.  *Aspen Tech., Inc. v. Kunt,* 2011 WL 86556 at *3 (S.D. Tex. Jan. 10, 2011).

However, NuStar has not addressed a single factor considered by courts in determining whether

to sever claims.  This comes as no surprise, given that *none* of them support NuStar's motion.

### (1) NuStar's Claims Arise out of the Same Transaction, Present Common Questions of Law and Fact, and Will Require the Same Witnesses and Documentary Proof

The first, second, and fifth factors are interconnected, and each weighs heavily against

severance.  Without question, NuStar's maritime lien claim, Hapag-Lloyd's counterclaims and

third-party claims, and OW Germany's interpleader claims arise out of the same transaction—to

wit, the supply of bunker fuel to the same vessel in October 2014—and all of them concern the

payment due for those bunkers. Thus, no matter how NuStar tries to skin the proverbial cat, it

cannot deny in good faith that these claims present overlapping legal and factual issues and

would require duplicative discovery if NuStar's lien claim were to be severed. As one court in

this District recently remarked in denying NuStar's motions to dismiss similar interpleader

claims and ING's counter/cross-claims:

> These claims arise from a single obligation: the obligation of the
> vessels to pay for the fuel they received. That NuStar has secured
> its claims, and its claims alone, with the escrowed funds has little
> bearing on the issues here.

*NuStar Energy Servs., Inc. v. M/V Cosco Auckland*, S.D. Tex. 4:14-cv-3648 (Ellison, J.) (Dkt. #

56, Mem. Opinion & Order dated Oct. 26, 2015, at p. 5, attached hereto as **Exhibit A**).

As the operator of the M/V COLUMBA, Hapag-Lloyd alleges that it is subject to

"competing claims from multiple parties for payment of the single sum due in respect to" the

bunker transaction at issue, even though it was the normal course of business for Hapag-Lloyd to

remit payment to its contractual supplier and direct counter-party, OW Germany. [3d Party

Compl., Dkt. # 15, at ¶¶ 16, 23.] Therefore, Hapag-Lloyd seeks the Court's assistance in

determining the proper recipient of payment and a discharge of all potential liability arising from

that singular transaction—whether based on *in personam* or *in rem* claims. [*Id.* at ¶¶ 25-31.]

NuStar does not contend that its claims arise out separate or independent transactions.

Instead, NuStar expressly acknowledges that it supplied bunker fuel to Hapag-Lloyd's vessel on

the order of O.W. Bunker USA, Inc. ("OW USA"), a non-party to this action. [S.D. Tex. 4:14-

cv-03294, Motion for Summary Judgment, Dkt. # 24 at pp. 2, 4.] NuStar further alleges that:

> [i]t is normal business practice in the marine fuel industry for a
> Vessel's owner or charterer to simply appoint an intermediary (such
> as O.W. Bunker), who thereafter selects a local fuel supplier (such
> as NuStar) to supply marine fuel directly to the Vessel when she
> arrives in port. That is precisely what occurred in this instance.

[*Id.* at p.2; footnote citation omitted.] In an attempt to avoid discovery and competing with the superior claims of OW Germany, NuStar argues that it has a maritime lien against the M/V COLUMBA as a matter of law, and that it need not establish an agency relationship or privity of contract under the Ninth Circuit's decision in *Marine Fuel Supply & Towing, Inc. v. M/V Ken Lucky*, 869 F.2d 473 (9th Cir. 1988). [S.D. Tex. 4:14-cv-03294, Dkt. # 24 at p. 12.] However, NuStar's contentions and its reliance on *Ken Lucky* are directly at odds with controlling Fifth Circuit case law:

> A review of the so-called middle-man cases [including *Ken Lucky*] does not reveal … that the actual deliverer of necessaries to the vessel is the entity entitled to a lien in every instance. For example, the court in *Exxon Corp. v. Central Gulf Lines, Inc.*, 780 F.Supp. 191 (S.D.N.Y. 1991), taking note of the Supreme Court's view of the circumstances of the case, *see Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 612-13, 111 S. Ct. 2071, 114 L.Ed.2d 649 (1991), held that the party contractually obligated to supply the fuel (Exxon) was entitled to a lien, despite the fact that it had caused another supplier to actually deliver the ordered fuel to the vessel. *See* 780 F.Supp. at 194.
>
> …
>
> We are persuaded by our review of these cases that it is not whether any intermediary can be expected to supply the necessaries itself that distinguishes instances in which the actual suppliers have liens, but it is rather the nature of the relationship between each pair of entities that are involved in the transaction at issue (e.g., agent vs. independent contractor).

*Lake Charles Stevedores, Inc. v. Prof. Vladimir Popov M/V*, 199 F.3d 220, 229-30 (5th Cir. 1999); *see also Martin Energy Servs., LLC v. M/V Bourbon Petrel*, 2015 WL 2354217 at *7 (E.D. La. May 14, 2015) (physical suppliers are "not inherently entitled to a lien as the actual deliverer of the bunkers, but the lien is contingent on the parties' relationships."). [2] Furthermore,

---

[2] OW Germany also disputes the conclusory "intermediary" label used by NuStar to describe OW USA, as well as its attempt to disregard the corporate separateness of different entities within the OW Bunker Group.

OW Germany notes that one court in this District recently denied a pre-discovery motion for summary judgment on nearly identical maritime lien claims filed by NuStar in another OW Bunker-related matter. *See NuStar Energy Servs., Inc. v. M/V Cosco Auckland*, S.D. Tex. 4:14-cv-3648 (Ellison, J.) (Minute Entry dated Oct. 14, 2015 & Dkt. # 57 Transcript of Hearing).

As discussed in OW Germany's motion to transfer venue [Dkt. #24], there are *two dozen* related actions pending before the Hon. Valerie E. Caproni in the Southern District of New York, which concern similar claims stemming from the collapse of the global OW Bunker Group. In finding that the court has subject matter jurisdiction over those actions pursuant to 28 U.S.C. §§ 1333 and 1335, Judge Caproni expressly acknowledged that the claims of the physical suppliers (e.g., NuStar) and contractual suppliers (e.g., OW Germany) arise from the same transactions:

> The Objecting Claimants' argument that their *in rem* claims against the Vessels are "separate and distinct" from the *in personam* claims against the Vessel Interest is without merit. Both the Objecting Claimants' *in rem* claims against the Vessels as well as any *in personam* claims that they or other may ultimately choose to assert against the Vessel Owners spring from a single event: the Objecting Claimants' provision of fuel to the Vessels pursuant to a contract, or series of contracts, between or among the Objecting Claimants, O.W. Entities, Vessel Interests and, in some cases, other third-party brokers.

[Dkt. #24-10 at p. 17.] To be clear, NuStar was one of the "Objecting Claimants" who contested the court's subject matter jurisdiction. [*Id.* at p. 13.] Moreover, NuStar and OW Germany are co-defendants and interpleader claimants in one of the cases before Judge Caproni. *See Bonny Gas Transport Ltd. v. O.W. Bunker Germany GmbH, et al.*, S.D.N.Y. 1:14-cv-9542 (VEC).

For its part, OW Germany has answered Hapag-Lloyd's Third-Party Complaint in this action, asserting that it is entitled to payment from Hapag-Lloyd and denying that NuStar has a maritime lien against the M/V COLUMBA as a mere sub-contractor of non-party OW USA. [Dkt. # 48 at ¶¶ 6-69.] OW Germany has also requested that it be allowed to conduct basic

discovery under Rule 56(d) in order to supports its claims and to challenge NuStar's alleged liens. [S.D. Tex. 4:14-cv-03294, Dkt. #48 at pp. 3-7.] Determining whether any party has maritime liens against the vessels, or is otherwise entitled to payment from Hapag-Lloyd, will require discovery from all of the entities in the bunker supply chain and necessarily would implicate the same witnesses and documentary evidence if NuStar's claims were to be severed. Accordingly, the first, second, and fifth factors (a majority in their own right) compel a denial of NuStar's motion.

### (2) A Transfer of Venue Would Promote Judicial Economy, Unlike the Severance of NuStar's Lien Claims

The third factor also weighs heavily against the severance of NuStar's lien claims. As demonstrated by OW Germany's motion to transfer venue [Dkt. #24], judicial economy would be promoted by transferring this entire action to the Southern District of New York based on, *inter alia*, the common legal and factual issues that it shares with the other OW Bunker-related actions pending in that district. Severance, on the other hand, would do nothing more than create yet another action and thereby multiply the possibility of inconsistent rulings on claims arising from the same transactions.

The Fifth Circuit has "long advocated that district courts [should] exercise their discretion to avoid duplication of proceedings where related claims are being litigated in different districts." *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985). Furthermore, the maritime nature of the parties' claims militates against severance, given that uniformity is a basic goal of federal admiralty law. *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992). Consistent with these principles, one district court recently granted OW Germany's motion to transfer a similar action (commenced by a

physical supplier in an attempt to enforce alleged maritime liens) from the Western District of

Washington to the Southern District of New York.  In doing so, the court concluded:

> These cases all appear to be related.  The most efficient way to
> handle them is for them to be in the same court.  The issues raised
> here are the same or similar to the other interpleader cases, and all
> of the parties in this case are represented by New York counsel.
> Issues decided in New York can affect the lien and arrest of the
> vessels.  It seems likely that if this case is not transferred, a stay in
> this jurisdiction would be necessary to avoid duplicate litigation of
> the *in personam* issues and the possibility of conflicting rulings.
> While this court is sympathetic to [the physical supplier's] plight, in
> the interest of justice to all parties concerned, this case should be
> transferred to the S.D.N.Y.

*U.S. Oil Trading, LLC v. M/V Vienna Express*, 2015 WL 4714838 at *10 (W.D. Wash. Aug. 7,

2015). [Dkt. # 32-2.]  The Washington court's concerns about efficiency, judicial economy, and

the possibility of conflicting rulings are no different than those facing this Court.  Accordingly,

the instant motion underscores the appropriateness of transferring this action to the Southern

District of New York.

There can be no doubt that the pendency of numerous related actions in another district—

which are before a single judge and are proceeding on consolidated schedules—weighs heavily

in favor of transfer.  *See Doubletree Partners, L.P. v. Land Am. Title Co.*, 2008 WL 5119599 at

*6 (N.D. Tex. Dec. 3, 2008); *Texas Util. Co. v. Santa Fe Indus., Inc.*, 553 F.Supp. 106, 110

(N.D. Tex. 1982).  With litigation ongoing in New York, "greater efficiencies in pretrial

discovery can be accomplished and, of no less importance, the avoidance of duplicative litigation

will stanch the waste of judicial resources."  *Ecoproduct Solutions, L.P. v. MMR Constructors,

Inc.*, 2007 WL 4414039 at *3 (S.D. Tex. Dec. 14, 2007).  "This is a special circumstance that

weighs in favor of transfer."  *Id.*  Severance, on the other hand, would require this Court to

address the exact same legal and factual issues before Judge Caproni—namely whether NuStar

(as a mere subcontractor) is entitled to maritime lien against Hapag-Lloyd's vessels even though it placed bunker orders with OW Germany. Accordingly, the third factor also militates against severance.

### (3) Severance Would Not Avoid Prejudice, But Instead Would Undermine the Very Purpose of Interpleader Relief

The fourth factor does not support NuStar's motion because severance would not avoid prejudice, but instead would lead to it. Whether requested under Rule 22 or 28 U.S.C. § 1335, interpleader relief is designed to protect stakeholders such as Hapag-Lloyd, not the claimants. "To this end the interpleader statutes and rules are liberally construed to protect the stakeholder from the expense of defending twice, as well as to protect him from double liability." *In re Bohart*, 743 F.2d 313, 324-25 (5th Cir. 1984). Therefore, NuStar's proposed severance would undermine the very purpose of Rule 22 and the federal interpleader statute, and would prejudice Hapag-Lloyd by forcing it to litigate related (if not competing) claims for payment in two separate actions.

As part of its Counterclaim and Third-Party Complaint, Hapag-Lloyd has proposed substituting its security agreement with NuStar and replacing the surety bond posted by Hapag-Lloyd in favor of NuStar with a separate bond that fully secures the claims of all interested parties. [Dkt. #15 at ¶ 32.] In light of this proposal, OW Germany respectfully submits that an Order requiring Hapag to deposit such a bond—into the Registry of either this Court or the Southern District of New York upon transfer—would be entirely appropriate under the circumstances. While a Rule 22 interpleader action does not require a deposit to establish jurisdiction, "the broad equitable powers of the Court in an interpleader action allow it to receive a deposit in accordance with Rule 67." *Southern Farm Bureau Life Ins. Co. v. Lusk*, 2014 WL

897812 at *4 (S.D. Tex. Mar. 6, 2014). Insofar as NuStar may try to argue that the proposed substitution would be detrimental to its claims, OW Germany asserts that NuStar would not suffer any prejudice whatsoever. As an interpleader claimant, NuStar would still be secured and would still be entitled to pursue its maritime lien claims. More importantly, whether or not (a) the current bond is replaced, (b) NuStar's claims are severed, or (c) this action is transferred to the Southern District of New York, NuStar would still need to prevail on the merits of its lien claims in order to collect judgment from any form of security posted by Hapag-Lloyd. Thus, while NuStar may prefer to be the only party with security, its preference does not equate to prejudice. Consistent with the purpose of interpleader relief, equity requires that all other claimants be equally secured in this matter by a substitute bond.

Finally, NuStar's focus on the forum-selection provision in the security agreement simply is not relevant to the Rule 21 analysis. [Dkt. #52 at p. 5-6.] As demonstrated by OW Germany's reply brief in support of the motion to transfer venue, NuStar and Hapag-Lloyd entered into the security agreement <u>after</u> the commencement of this action. [Dkt. #32 at pp. 4-5; *see also* Dkt. #26 at p. 1 n.1.] Therefore, the Supreme Court's decision in *Atlantic Marine Constr. Co. v. U.S. Dist. Court for W.D. Tex.*, -- U.S. --, 134 S. Ct. 568 (2013), does not instruct this Court to give "controlling weight" to the forum-selection clause. In the recent words of the Fifth Circuit:

> *Atlantic Marine* was premised on the fact that the parties had agreed <u>in advance</u> where their private litigation interests lie, and the reviewing court had no cause to disturb those expectations. A litigant not party to such a contract did not, of course, make any such <u>advance agreements</u> and *their* private interests must still be considered by the district court.

*In re Rolls Royce Corp.*, 775 F.3d at 679 (footnotes omitted; underline emphasis added). Furthermore, it is evident that Hapag consented to the terms of the security agreement under commercial duress after NuStar arrested or threatened to arrest ten different vessels pursuant to

arrest warrants obtained on an *ex parte* basis. [Dkt. # 3, 5 & 6; *see also* S.D. Tex. 4:14-cv-

03294, Dkt. #2, 3 & 4.] Indeed, the Washington court acknowledged this type of unequal

bargaining power in granting OW Germany's motion to transfer a similar action to the Southern

District of New York:

> While USOT [the physical supplier] is quick to point to the forum
> selection clause in the LOU [letter of undertaking] regarding the
> M/V VIENNA EXPRESS, that LOU does not appear to bind any of
> the other interested parties … Moreover, it appears USOT had a
> great deal or bargaining power when it acquired the forum selection
> clause in the LOU. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,
> 29 (1988) (court can consider the parties relative bargaining power
> in considering motions to transfer).

[Dkt. #32-2 at p. 16.] Thus, NuStar cannot feign prejudice as if it were being deprived of the

benefits of a contract that was freely negotiated between parties of equal bargaining power prior

to a dispute. In any event, the Fifth Circuit has explicitly acknowledged that *Atlantic Marine* is

not a "mandate" to sever claims based on a forum-selection clause "regardless of countervailing

considerations of judicial economy." *In re Rolls Royce Corp.*, 775 F.3d at 677.

In sum, all five of the factors considered by district courts under Rule 21 weigh heavily

against the severance of NuStar's maritime lien claim. Accordingly, NuStar's motion must be

denied. *See Beechgrove Redevelopment, LLC v. Carter & Sons Plumbing*, 2009 WL 382713 at

*7 (E.D. La. Feb. 11, 2009).

## B. OW GERMANY'S CHAPTER 15 PETITION IS IRRELEVANT TO THIS MOTION

NuStar grossly mischaracterizes (and perhaps, misunderstands) OW Germany's

intentions with respect to its chapter 15 filing in the Southern District of New York. OW

Germany has never raised that district's Amended Standing Order of Reference [Dkt. #52-3,

hereinafter "SDNY Standing Order"] as a basis for transferring this action to the U.S.

Bankruptcy Court for the Southern District of New York, as alleged by NuStar's motion to sever [Dkt. #52 at p.3]. However, *if and when* this Court grants OW Germany's pending motion to transfer venue pursuant to 28 U.S.C. § 1404(a), OW Germany will seek to enforce the SDNY Standing Order, consistent with its position in several related actions before Judge Caproni.

Contrary to NuStar's straw-man arguments, OW Germany has never claimed the SDNY Standing Order requires the transfer of "all pending litigation" to the chapter 15 proceeding. Instead, OW Germany's intentions were clearly laid out in a letter submitted to Judge Caproni (attached hereto as **Exhibit B)** and served on all appearing parties via ECF, including NuStar. The fact that no such letter or motion was filed in this action speaks volumes about the lack of attempt by OW Germany to enforce the SDNY Standing Order in this District or on this Court. While OW Germany readily agrees with NuStar that standing orders of reference are not "litigation gamesmanship vehicles," it does not follow that NuStar may ignore the proper Rule 21 analysis by attributing non-existent arguments or stratagems to OW Germany. Accordingly, NuStar's motion to sever must be denied.

# IV.
## CONCLUSION

For the foregoing reasons, OW Germany respectfully requests that the Court: (a) grant the request for a status conference on all case-related matters; and (b) deny NuStar's motion to sever its maritime lien claims.

Dated: December 1, 2015

Respectfully submitted,

 /s/  Justin M. Heilig
_____

JUSTIN M. HEILIG
S.D. Tex. No. 1410754
New York State No. 4699229
HILL RIVKINS LLP
45 Broadway, Suite 1500
New York, NY 10006
Tel: (212) 669-0600
Fax: (212) 669-0698
Email: jheilig@hillrivkins.com

Of Counsel:

DANIELA OLIVEIRA
S.D. Tex. No. 1314516
Texas Bar No. 24075837
HILL RIVKINS LLP
55 Waugh Drive, Suite 1200
Houston, TX 77007
Tel: (713) 222-1515
Fax: (713) 222-1359
Email: doliveira@hillrivkins.com

*Attorney-in-Charge for Third-Party*
*Defendant O.W. Bunker Germany GmbH*

DARREN T. AZMAN, *pro hac vice*
New York State No. 4911673
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10173
Tel: (212) 547-5400
Fax: (212) 547-5444
Email: dazman@mwe.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2015, I caused the foregoing document to be filed on the Court's CM/ECF System for electronic service on all counsel of record in this action.

 /s/  Justin M. Heilig
_____

# EXHIBIT A

United States District Court
Southern District of Texas

**ENTERED**

October 26, 2015

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **NUSTAR ENERGY SERVICES, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:14-CV-3648** |
| | § | |
| **M/V COSCO AUCKLAND, IMO NO.** | § | |
| **9484261,** *et al*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Defendants, four COSCO vessels, have sought interpleader relief from this Court and have named ING Bank as a Third-Party Defendant. Plaintiff NuStar Energy Services, Inc. ("NuStar") has filed before this Court a Motion to Dismiss ING Bank N.V.'s Counter-Claims/Cross-Claims. Doc. No. 35. In this action involving alleged maritime liens against the four COSCO vessels, NuStar argues that interpleader is inappropriate and that ING Bank is not a proper party to this case. After considering the submissions of the parties and the applicable law, the Court concludes that the requirements for a Rule 22 interpleader have been met and the motion should be denied.

## I.        BACKGROUND

In 2014, the owners of the four COSCO vessels—the COSCO Auckland, the COSCO Haifa, the COSCO Venice, and the Tian Bao He—submitted orders for fuel bunkers to COSCO Petroleum Ptd. Ltd. ("Petroleum"). Petroleum appointed Chimbusco Americas, Inc. ("Chimbusco") as its agent to procure the bunkers for the vessel owners. Chimbusco then contracted with O.W. Bunker Far East (Singapore) Pte. Ltd. ("O.W. Far East"), which in turn

1

contracted with O.W. Bunker USA, Inc. ("O.W. USA"), for the requested bunkers.  Finally, O.W. USA contracted with NuStar to physically supply the bunkers to the COSCO vessels.  NuStar supplied the bunkers directly to the COSCO vessels, fulfilling its obligations under the contract between NuStar and O.W. USA.  The chief engineer for each vessel accepted and signed for the deliveries.

After NuStar delivered the bunkers, however, members of the O.W. Bunker group— including O.W. Far East and O.W. USA—filed voluntary petitions in the U.S. Bankruptcy Court for the District of Connecticut, and O.W. USA notified NuStar that it did not intend to make any of the payments due under the sales contracts.  Doc. No. 22 at 13; Doc. No. 45 at 4.  NuStar is a party in interest in the bankruptcy proceedings.  Two of the COSCO vessel owners—the owner of COSCO Auckland and the owner of Tian Bao He—have received invoices from O.W. Far East for the bunker deliveries, but none of the owners has made payments to any party.  Doc. No. 13 at 11-13.

Before filing this lawsuit, NuStar and the COSCO vessel owners reached an agreement whereby NuStar would refrain from arresting the vessels, and the COSCO vessels' authorized agent, Chimbusco, would deposit the disputed funds—totaling $2,690,804.70—into an escrow account.  Doc. No. 1-1 at 2-3.  NuStar then filed this lawsuit *in rem*.  NuStar asserts that it has a maritime lien against each vessel under 46 U.S.C. § 31301 *et seq*., and it brings this action to recover the value of the fuel it delivered.  It is undisputed that NuStar delivered the fuel bunkers to the COSCO vessels, and that those bunkers are "necessaries" under 46 U.S.C. § 31342; however, the parties disagree as to whether or not the bunkers were provided to the vessels "on the order of the owner[s] or [] person[s] authorized by the owner[s]."

2

In its Answer and Third Party Complaint, the COSCO vessels assert a claim for interpleader relief under Federal Rule of Civil Procedure 22 and name the O.W. entities and ING Bank as counter-defendants. Doc. No. 13 ¶¶ 54-57, 91. The COSCO vessels also claim to have satisfied the requirements of the Federal Interpleader Act, 28 U.S.C. § 1335, and they assert that the funds in escrow satisfy the bond requirements under that Act. Doc. No. 13 ¶ 94.

ING Bank asserts that it is a secured party as to assets of the bankruptcy debtors. Doc. No. 45 at 4, 7. In its Answer to the Counterclaim and Third Party Complaint, however, O.W. USA denies "that ING is a third-party beneficiary of the Bunker supply at issue and assignee of the Debtors' receivables." Doc. No. 27 at 5.

In its Motion to Dismiss ING Bank's Counter-Claims/Cross Claims, NuStar asserts that the interpleader is invalid because, under the security agreement between NuStar and COSCO, the funds in escrow can be paid only to NuStar, if indeed NuStar is found to hold a maritime lien against the vessels. ING Bank argues that the interpleader is proper because ING Bank and NuStar have competing claims for payments on the same bunker deliveries, exposing the COSCO vessel owners to multiple liability on the same obligations.

## II.  LEGAL STANDARDS

In the Fifth Circuit, "interpleader statutes and rules are liberally construed to protect the stakeholder from the expense of defending twice, as well as to protect him from double liability." *In re Bohart,* 743 F.2d 313, 325 (5th Cir. 1984) (internal quotation marks omitted). Federal Rule of Civil Procedure 22 provides:

> "Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead. Joinder for interpleader is proper even though:
> (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical; or
> (B) the plaintiff denies liability in whole or in part to any or all of the claimants.

3

> . . . A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim. . . . This rule supplements—and does not limit—the joinder of parties allowed by Rule 20. The remedy this rule provides is in addition to—and does not supersede or limit—the remedy provided by 28 U.S.C. §§ 1335, 1397, and 2361. An action under those statutes must be conducted under these rules."

Fed. R. Civ. P. 22.

The interpleader statute, 28 U.S.C. § 1335, requires the party facing multiple adverse claims to deposit the disputed funds into the registry of the court. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976). As the COSCO vessels have not done so, this interpleader may proceed only under Rule 22, which does not require a deposit. *Id.*

Although Rule 22 does not necessarily require that a discrete stake or fund be at issue, "even under rule interpleader the threat of multiple litigation must arise from some single obligation of the plaintiff to one or more competing claimants." 21 Fed. Proc., L. Ed. § 49:2. "[A] prerequisite for permitting interpleader is that two or more claimants must be 'adverse' to each other. The requirement that the claims as to which interpleader is sought be adverse to each other is not met when the 'stakeholder' may be liable to both claimants. Thus, the protection against 'double or multiple liability' provided by Rule 22 is protection only against double or multiple liability that is unjustifiable because the plaintiff has but a single obligation." *Bradley v. Kochenash*, 44 F.3d 166, 168 (2d Cir. 1995) (internal quotation marks and citations omitted). In other words, if a party could, "as a matter of theory, justifiably be found liable to both sets" of claimants, the interpleader complaint is improper and should be dismissed. *Bradley v. Kochenash,* 44 F.3d 166, 168-69 (2d Cir. 1995).

## III.    ANALYSIS

The COSCO vessels each face competing claims to a maritime lien—by NuStar, O.W. USA, and ING Bank, on behalf of O.W. Far East—based upon the delivery of the same bunkers.

These claims arise from a single obligation: the obligation of the vessels to pay for the fuel they received. That NuStar has secured its claims, and its claims alone, with the escrowed funds has little bearing on the issues here. ING Bank does not claim a right to those particular funds, but to the underlying liens themselves. It is not necessary for ING Bank to have standing to assert a claim against the escrowed funds in order for ING Bank to be a proper party in this interpleader; it is enough that its claims are adverse to NuStar's, and that, with regard to the maritime liens, the COSCO vessels could not "justifiably be found liable" to both parties. At this point in the proceedings, the Court need not decide which claims are meritorious. *See Auto Parts Mfg. Mississippi, Inc. v. King Const. of Houston, LLC*, 782 F.3d 186, 194 (2015). The competing claims have been made, and this interpleader is the proper method of resolving them.

## IV.   CONCLUSION

For the foregoing reasons, this Court finds that the pending interpleader action is consistent with Rule 22. The Motion to Dismiss ING Bank N.V.'s Counter-Claims/Cross-Claims is **DENIED**.

**IT IS SO ORDERED.**

Signed this 26th day of October, 2015.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

# McDermott
# Will & Emery

Boston  Brussels  Chicago  Dallas  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Rome  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Timothy W. Walsh
Attorney at Law
twwalsh@mwe.com
+1 212 547 5873

November 11, 2015

VIA ECF SYSTEM

The Honorable Valerie E. Caproni
U.S. District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re:     Civil Action No. 14-cv-09949 (VEC)
        Civil Action No. 14-cv-10027 (VEC)
        Civil Action No. 14-cv-09949 (VEC)
        Civil Action No. 15-cv-06718 (VEC)
        Civil Action No. 15-cv-00190 (VEC)

Dear Judge Caproni:

        We represent O.W. Bunker Germany GmbH ("OW Germany"), together with our co-counsel Hill Rivkins LLP, in the above-referenced actions.

        We write to inform the Court that on November 11, 2015, Dr. Gideon Böhm, the duly appointed administrator and foreign representative of OW Germany, which is currently in administration proceedings under the Germany Insolvency Code (the "German Proceeding"), filed a chapter 15 petition in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") seeking recognition of the German Proceeding as a "foreign main proceeding" pursuant to Bankruptcy Code section 1517 (the "Chapter 15 Proceeding").

        Pursuant to Bankruptcy Code section 1520, the automatic stay under Bankruptcy Code section 362 will apply with respect to OW Germany after the German Proceeding is recognized as a "foreign main proceeding" by the Bankruptcy Court.  At this time, OW Germany does not intend to invoke the automatic stay with respect these actions.  However, after the Bankruptcy Court grants recognition of the German Proceeding as a "foreign main proceeding," OW Germany intends to file a motion with this Court seeking an order confirming that the Amended Standing Order of Reference in this District (M-431) requires that these actions be referred to the Bankruptcy Court.  After these actions are referred to the Bankruptcy Court, OW Germany intends to withdraw the reference to the Bankruptcy Court with respect to these actions, pursuant to section 157 of title 28 of the United States Code, but only for the limited purpose of Your

The Honorable Valerie E. Caproni
November 11, 2015
Page 2

Honor resolving issues related to maritime law.  Specifically, OW Germany contemplates that
Your Honor will adjudicate whether the physical suppliers have maritime liens.  After
adjudication by Your Honor of this (and any other) maritime issue, OW Germany contemplates
that the Bankruptcy Court will adjudicate all remaining issues, including which party is entitled
to the interpleader funds.

OWG intends to comply with its discovery obligations in these actions, including Your
Honor's deadline for completing discovery by December 18, 2015.  The Chapter 15 Proceeding
is not intended to disrupt the discovery schedule set forth by the Court.  However, as discussed at
our last telephonic status conference with Your Honor, there may be factors independent of the
Chapter 15 Proceeding that necessitate a further extension to the discovery deadline in these
actions.

We thank the Court for its attention to the foregoing issues, and stand ready to answer
any questions that Your Honor may have.

Sincerely,

Timothy W. Walsh

Cc:     All counsel of record via ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NUSTAR ENERGY SERVICES, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:14-cv-03350 |
| - against - | § | |
| | § | Filed under Fed. R. Civ. P. 9(h) |
| M/V COLUMBA, IMO No. 9143233, | § | |
| her engines, apparel, furniture, equipment, | § | (ADMIRALTY) |
| appurtenances, tackle, etc., *in rem*, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |
| | § | |
| HAPAG-LLOYD AKTIENGESELLSCHAFT, | § | |
| as claimant to the *in rem* defendant, | § | |
| | § | |
| Third-Party Plaintiff, | § | |
| | § | |
| - against - | § | |
| | § | |
| O.W. BUNKER GERMANY GMBH, O.W. | § | |
| BUNKER USA, INC. and ING BANK N.V., | § | |
| | § | |
| Third-Party Defendants. | § | |

**ORDER DENYING PLAINTIFF'S MOTION
TO SEVER CLAIMS**

The Court has considered the Motion to Sever Claims [Dkt. #52] of plaintiff NuStar

Energy Services, Inc. ("NuStar"), and the opposition of third-party defendant O.W. Bunker

Germany GmbH ("OW Germany"). The Court finds that none of the factors considered in

determining whether to sever claims under Fed. R. Civ. P. 21 weigh in favor of severing

NuStar's maritime lien claims from the above-captioned action. *See Paragon Office Servs., LLC*

*v. UnitedHealthcare Ins. Co., Inc.*, 2012 WL 4442368 at *1 (N.D. Tex. Sept. 26, 2012).

1

It is therefore ORDERED that NuStar's motion is DENIED. It is further ORDERED that parties are to appear before the Court for a status conference on all case-related matters on _____, 20 ___ at _____ a.m./p.m.


Done in Houston, Texas on this ____ day of _____, 20___.


_____
Lynn N. Hughes, United States District Judge